IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

TONY SENO,

    Plaintiff,

v.                                                               Civ. 11-0903 GBW/LAM

VILLAGE OF RUIDOSO,
RAY ALBORN, and JOE MAGILL,

    Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Defendants' Motion to Dismiss. *Doc. 5.* Defendants contend that Plaintiff's Fourth Amendment claim fails as a matter of law and Plaintiff's remaining claims for relief are moot. Because this Court agrees, it will grant the motion and dismiss all claims with prejudice.

    I. *Background*

On July 26, 2011, Plaintiff, Tony Seno attended a Village of Ruidoso council meeting. *See doc. 1* Ex. A ¶ 5.[1] Throughout the meeting, Plaintiff openly and lawfully carried a handgun. *See id.* ¶¶ 6, 9. When the council invited audience participation, Plaintiff approached the podium. *Id.* ¶ 7. Before Plaintiff reached the podium, the Village of Ruidoso's Chief of Police, Defendant Joe Magill ("Defendant Magill"),

---

[1] Because, in a Motion to Dismiss, the Court must view all facts in the light most favorable to the Plaintiff, *Nelson v. State Farm Mut. Auto Ins. Co.*, 419 F.3d 1117, 1119 (10th Cir. 2005), this Court relies upon the facts as stated in Plaintiff's Complaint and in Plaintiff's briefing and argument on the instant Motion.

stopped him. *Id.* ¶ 8. Defendant Magill told Plaintiff that he could not allow Plaintiff to go to the podium while wearing his gun, but Plaintiff replied, "Yes you can." *Id.* ¶¶ 9-10. Defendant Magill reiterated that Plaintiff could not go to the podium wearing his gun because Defendant, Mayor Ray Alborn, had discussed it with Defendant Magill and determined Plaintiff could not. *Id.* ¶ 10.

Plaintiff alleges that, "[i]mmediately after" this exchange, Defendant Magill "grabbed Plaintiff's gun . . . ." *Doc. 1* Ex. A ¶ 11. Plaintiff tried and failed to prevent Defendant Magill from taking his gun. *Id.* ¶ 11-12. Defendant Magill informed Plaintiff that he would return the gun once Plaintiff finished speaking. *Id.* ¶ 12. Following his remarks, Plaintiff proceeded to the lobby and his firearm was returned. *Id.* ¶ 13. Plaintiff was without his firearm for approximately five minutes. FTR Dona Ana, 11/22/2011, 10:20:06-10:20:25.[2] Plaintiff wrote a letter to the local newspaper criticizing Defendants Alborn and Magill. According to Plaintiff, "Mayor Alborn unilaterally issued an order prohibiting citizens from wearing firearms while on municipal property[,]" as retaliation to Plaintiff's letter. *Id.*

Subsequently, Plaintiff filed suit in State court alleging that Defendant Village of Ruidoso's policy violated a state constitutional prohibition against municipalities regulating firearms. He further argued that Defendants had violated his rights under the Fourth Amendment to the United States Constitution in the incident at the council

---

[2] Citations to the specific discussions in the hearing reference the Court's digital recording system ("FTR"). Times correspond to the hour, minute, and seconds at which the statements were made.

meeting. *Doc. 1* Ex. A. Defendants removed the case to this Court. *Doc. 1.* The Village of Ruidoso later rescinded the ordinance in question. *See doc. 5* at 7; FTR Dona Ana, 11/22/2011, 10:03:00-10:03:31.

Defendants filed the Motion to Dismiss on October 17, 2011. *Doc. 5.* The parties briefed the matter, and this Court held a hearing. *Doc. 12*. At the end of the hearing, Plaintiff indicated an intention to file a motion seeking leave to amend in hopes of curing the deficiencies of this suit. FTR Dona Ana, 11/22/2011, 10:25:46-10:29:44. The Court gave Plaintiff until December 2, 2011 to file that motion. *Id.* No such motion has been filed in the months since the hearing.

II. <u>Analysis</u>

A party may, before serving a responsive pleading, move to dismiss a case for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "Based on [Federal Rules 8(a)(2) and 12(b)(6)], a complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Syrus v. Bennett*, No. 11-6117, 2011 U.S. App. LEXIS 22304, at *3 (10th Cir. Nov. 3, 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In ruling on a motion to dismiss under 12(b)(6), the Court must "accept all well-pleaded factual allegations in the complaint as true and view them in the light most favorable to the nonmoving party." *Nelson v. State Farm Mut. Auto Ins. Co.*, 419 F.3d 1117, 1119 (10th Cir. 2005).

A. *Seizure of Person and Weapon*

Although not explicitly separated by Plaintiff, there appear to be two, discrete alleged seizures at issue. *See doc. 1* Ex. A ¶¶ 15-26. First, Plaintiff appears to argue that his person was improperly seized when he was not permitted to go up to the podium wearing a holstered firearm. *See id.* Second, Plaintiff seems to contend that his firearm was improperly seized because it was held by officers while he spoke. *See id.* Neither situation constitutes a seizure under relevant law; therefore, no unconstitutional seizure occurred.

1. *Seizure of Plaintiff's Person*

Plaintiff's first basis for an alleged unconstitutional seizure appears to be either the point at which he was told he could not approach the podium with his firearm, or the point at which the officer wrestled away his firearm.[3] *See generally doc. 1* Ex. A¶ 20.

The Fourth Amendment of the United States Constitution provides that the "right of the people to be secure in their persons . . . and effects, against unreasonable . . . seizures, shall not be violated . . . ." U.S. Const., amend IV. "'[N]ot all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may [the Court] conclude that a 'seizure' has

---

[3] It is actually not entirely clear whether Plaintiff argues that the former was the alleged seizure. To the extent that he meant to argue either of these as the seizure, however, the same law applies and both are not seizures under the Fourth Amendment for reasons stated *infra*.

4

occurred.'" *United States v. Martin*, 613 F.3d 1295, 1300 (10th Cir. 2010) (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968)).

In determining whether a person has been seized, the Court considers whether, "'in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" *United States v. Luna-Gonzalez*, 90 Fed. App'x 366, 369 (10th Cir. 2004) (quoting *California v. Hodari D.*, 499 U.S. 621, 627-68 (1991)). Under the "free to leave" test, a person is not seized even if proceeding beyond a point is restricted. *See Watchtower Bible & Tract Soc'y of N.Y., Inc. v. Jesus*, 634 F.3d 3, 10 (1st Cir. 2011) (holding denial of entry at an urbanization barrier not seizure because person could leave); *see also United States v. Mendenhall*, 446 U.S. 544, 554 (1980) ("As long as the person to whom questions are put remains free to . . . walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification.").

Even taking as true all of Plaintiff's allegations, the Court finds that he was at all times free to terminate the encounter and, therefore, was never seized. Plaintiff alleges that, "[w]hen the audience participation portion of the meeting arrived[, ]Plaintiff stood up from his seat and began to walk toward the podium." *Doc. 1*, Ex. A ¶ 7. He then asserts that Defendant Magill told him that he could not wear his firearm at the podium. *Id.* ¶¶ 8-9. When Plaintiff responded that he could and attempted to proceed to the podium, the officer placed his hand on the weapon and "was able to overpower

5

Plaintiff and take his gun." *Id.* ¶¶ 10-12.  Although Plaintiff described this encounter as a "wrestling match" in the hearing on this matter, (*FTR Dona Ana*, 11/22/2011, 10:20:06-10:20:25), Plaintiff has not alleged that the officer preventing him from doing anything other than going to the podium wearing his firearm.  Plaintiff was free to leave the chamber with his firearm.  Plaintiff was free to walk around the room with his firearm.  And Plaintiff was free to go to the podium if he relinquished his firearm while he was at the podium.  Under these facts, Plaintiff was not seized within the meaning of the Fourth Amendment.

## 2. *Seizure of Plaintiff's Firearm*

Plaintiff alleges that Defendants unconstitutionally seized his firearm.  Both the brevity of the deprivation and the minimal impact on its use preclude a finding that a seizure occurred.

"[T]he [Fourth] Amendment protects property as well as privacy."  *Soldal v. Cook County*, 506 U.S. 56, 62 (1992).  In order for property to be seized, there must be "some meaningful interference with an individual's possessory interests in that property."  *Id.* "It is the extent of the interference with the defendant's possessory interest in his property . . . that determines whether a seizure has occurred."  *United States v. England*, 971 F.2d 419, 421 (9th Cir. 1992).  This Court, therefore, must look at the extent of the interference here and determine if Plaintiff's allegations establish a "meaningful

6

interference" with his possessory interests in the firearm. Several facts establish that they do not.

First, and most importantly, Plaintiff concedes that the firearm was taken from Plaintiff for approximately five minutes. *FTR Dona Ana*, 11/22/2011, 10:24:03-10:24:30. The shortness of the deprivation weighs heavily against considering it a "meaningful interference with . . . possessory interests." *See, e.g. Porter v. Jewell*, 453 Fed. App'x 934, 937 (11th Cir. 2012) (property damage to plaintiff's door was not seizure where damage was minor and was repaired within an hour).

Second, the length of the deprivation (and indeed whether it happened at all) was within the control of Plaintiff. He was deprived of the firearm only for the length of time for which he wished to speak at the podium. The firearm was returned to him right after he finished speaking. *Doc. 1*, Ex. A ¶ 13. The brief detention of the firearm in no way interfered with his ability to speak[4] at the council meeting or his ability to depart it. *See United States v. Johnson*, 990 F.2d 1129, 1132 (9th Cir. 1993) (no meaningful interference where detention of airline luggage had no impact on owner's travel); *United States v. Brown*, 884 F.2d 1309, 1311 (9th Cir. 1989) (same).

Third, the firearm was not damaged or altered in any fashion during its brief detention. *See United States v. Twitty*, No. 08-20345, 2009 WL 2516948, at *7 (W.D. Tenn. Aug. 14, 2009) (removing firearm from within reach of person being interviewed by

---

[4] The Court notes that Plaintiff makes no First Amendment claim.

7

officer and placing it in another room during interview was not "meaningful interference").

Taking all of Plaintiff's allegations as true, the circumstances surrounding the taking of Plaintiff's firearm do not constitute a "meaningful interference" with his possessory interests in the firearm. As such, Plaintiff's firearm was not seized under the Fourth Amendment.

### B. *Mootness*

Defendants contend that Plaintiff's remaining requests for relief are moot because the council has rescinded the challenged ordinance. *Doc. 5* at 7. The Court agrees.

"Mootness is a threshold issue because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction." *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1109 (10th Cir. 2010). Under the mootness doctrine, regardless of whether a matter was initially justiciable, if "the controversy ceases to exist, the federal court must dismiss the action for want of jurisdiction." *Jordan v. Sosa*, 654 F.3d 1012, 1023 (10th Cir. 2011). The "plaintiff's continued susceptibility to injury must be reasonably certain; a court will not entertain a claim for injunctive relief where the allegations 'take it into the area of speculation and conjecture.'" *Id.* at 1024 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 497 (1974)).

Mootness is connected to both constitutional requirements and prudential concerns for judicial efficiency. *Jordan*, 654 F.3d at 1023. "Under the constitutional mootness doctrine, the suit must present a real and substantial controversy with respect to which relief may be fashioned." *Id.* at 1023-24. Even if the constitutional mootness inquiry is met, however, "a court may dismiss a case under the prudential-mootness doctrine if the case 'is so attenuated that considerations of prudence and comity . . . counsel the court to stay its hand, and to withhold relief it has the *power* to grant." *Id.* at 1024 (brackets omitted) (emphasis in original).

Two relevant exceptions to apparent mootness exist: (1) conduct capable of repetition yet evading review, *see Jordan v. Sosa*, 654 F.3d 1012, 1035-36 (10th Cir. 2011), and (2) voluntary cessation of unlawful conduct, *see Rio Grande Silvery Minnow*, 601 F.3d at 1115. Plaintiff did not brief the applicability of either exception. In fact, Plaintiff's only written response to the argument that the request for injunctive relief is moot is that "there is no evidentiary support for Defendants' mootness argument." *Doc. 7 at 9*.

At the hearing on this motion, Plaintiff's counsel argued that the request for injunctive relief was not moot because the council could simply continually reinstate and then withdraw the ordinance leading to "one of those repetitious harms that will never be addressed by the court." FTR Dona Ana, 11/22/2011, 10:05:20-10:05:53. This language may be an attempt to invoke the "capable of repetition" exception. To the extent that it is, Plaintiff cannot meet the requirements of this exception which "is only

9

to be used in exceptional circumstances." *Jordan*, 654 F.3d at 1035. Under the exception, a Plaintiff bears the burden of showing both that "the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and there is a reasonable expectation that the same complaining party will be subjected to the same action again." *Id.* Plaintiff has failed to carry his burden on either of these elements.

Plaintiff's argument at the hearing may also be an attempt to invoke the "voluntary cessation" exception. This exception applies where "a defendant[] voluntar[ily ends] an alleged illegal practice [but] is free to resume at any time." *Rio Grande Silvery Minnow*, 601 F.3d at 1115. This "exception exists to counteract the possibility of a defendant ceasing illegal action long enough to render a lawsuit moot and then resuming the illegal conduct." *Chihuahuan Grasslands Alliance v. Kempthorne*, 545 F.3d 884, 892 (10th Cir. 2010). "Voluntary actions may, nevertheless, moot litigation if two conditions are satisfied: '(1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" *Rio Grande Silvery Minnow*, 601 F.3d at 1115 (quoting *Cnty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)).

The language in some opinions applying this exception implies a heavy burden upon defendants who voluntarily terminate their conduct and then seek to dismiss on mootness grounds. *See, e.g., Friends of the Earth v. Laidlaw Envtl. Servs. (TOC)*, 528 U.S.

167, 189 (2000) ("The 'heavy burden of persuading' the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness."). "In practice, however, *Laidlaw'*s heavy burden frequently has not prevented governmental officials from discontinuing challenged practices and mooting a case." *Rio Grande Silvery Minnow*, 601 F.3d at 1116. "Even when a legislative body has the power to re-enact an ordinance or statute, ordinarily an amendment or repeal of it moots a case challenging the ordinance or statute." *Id.* So long as "there is no evidence in the record that the legislature intends to reenact the prior version of the disputed statute", repeal of an ordinance or statute moots a controversy. *Id.*

Plaintiff concedes that the ordinance he challenges is no longer in force. FTR Dona Ana, 11/22/2011, 10:03:00-10:03:31. As his sole basis for arguing that the case presents a live controversy, Plaintiff's contends that, in a radio appearance, the Mayor has expressed his intent to bar firearm possession as before. *Id.* 10:02:00– 10:02:24. However, Plaintiff concedes that the Mayor does not have the unilateral power to reenact the ordinance. *Id.* 10:03:19-10:03:41; s*ee also* Village of Ruidoso, N.M. Code of Ordinances § 2-6 (2011), http://library.municode.com/index.aspx?clientId=13106 ("governing body of the village shall consist of a mayor and six councilors, known as the council, . . . and all legal powers of the village shall be vested in the council."). Plaintiff presents no other evidence that the city council intends to reenact the ordinance. Plaintiff concedes that, with the repeal of the ordinance, the injunction he

11

seeks would simply amount to an order to "not violate the law." *See id.* 10:03:00-10:06:50.  Under these circumstances, the "voluntary cessation" exception is not applicable.

Because the challenged ordinance has been repealed and no mootness exception applies, this Court holds that Plaintiff's claim for injunctive relief is constitutionally moot.  That is, there is no live controversy as to that relief which is a prerequisite to this Court's jurisdiction.  Moreover, even if this case was not moot as a matter of constitutional consideration, this Court holds that it is prudentially moot.  At issue in this case is Plaintiff's objection to a prior policy that apparently forbade nothing more than possession of firearms while speaking at the podium during Council meetings.  In these circumstances, "considerations of prudence and comity for coordinate branches of government counsel the court to stay its hand . . . ."  *Rio Grande Silvery Minnow*, 601 F.3d at 1121.

Of course, the "mootness of a plaintiff's claim for *injunctive relief* is not necessarily dispositive regarding the mootness of his claim for a *declaratory judgment*."  *Jordan*, 654 F.3d at 1025 (emphasis in original).  However,

> Declaratory judgment actions must be sustainable under the same mootness criteria that apply to any other lawsuit.  When we apply the mootness doctrine in the declaratory judgment context, it is well established that what makes a declaratory judgment action a proper judicial resolution of a case or controversy rather than an advisory opinion is the settling of some dispute which affects the behavior of the defendant toward the plaintiff.  Thus, where a plaintiff seeks a declaratory judgment against his opponent, he must assert a claim for relief that, if granted,

12

> would affect the behavior of the particular parties listed in his complaint. That a declaration might guide third parties ( i.e., those not parties to the lawsuit) in their future interactions with a plaintiff is insufficient. Under the federal Declaratory Judgment Act, Congress has authorized declaratory judgments only in . . . cases of actual controversy. Thus, the controversy must be real and substantial, ... admitting of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical set of facts. A declaratory judgment that merely seeks to affect the (uncertain) future conduct of third parties—who are not named in a plaintiff's complaint— would involve the very sort of speculative, "hypothetical" factual scenario that would render such a judgment a prohibited advisory opinion.

*Id*. at 1025-26 (citations and quotations omitted).  Plaintiff does not dispute that the challenged ordinance has been repealed.  Therefore, a declaratory judgment will have no effect on the **present** status of the parties.  *See* Note, *Cases Moot on Appeal: A Limit on the Judicial Power*, 103 U. Pa. L. Rev. 772, 775 (1955) ("For obvious reasons, courts prefer not to enter decrees which will have no effect on the present status of the parties, and will dismiss such cases in order to devote their time to the decision of live controversies, which do give relief to those whose rights have been violated.") (*cited with approval in Jordan*, 654 F.3d at 1026).

Plaintiff seeks a declaratory judgment only for its effect on future city councils considering future possible ordinances.  Obviously, those future ordinances could be slightly or very different from the one challenged by Plaintiff.  The Court is being asked to generally opine on the appropriateness of gun regulation in the context of public meetings and forums.  Such would be an impermissible advisory opinion.

Consequently, this Court holds that Plaintiff's request for declaratory relief is both constitutionally and prudentially moot due to the repeal of the challenged ordinance.

### III. *Conclusion*

Plaintiff's claims under the Fourth Amendment fail because neither Plaintiff nor his firearm was seized within the meaning of the Amendment.

Plaintiff's remaining requests for relief have been mooted by the repeal of the challenged ordinance. On both constitutional and prudential grounds, the Court finds the requests for injunctive and declaratory relief fail for that reason.

Thus, Plaintiff's Complaint fails to state any claim upon which relief can be granted.

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss is GRANTED, Plaintiff's Complaint is DISMISSED WITH PREJUDICE, and judgment will be entered.

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent